**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Ronald Joseph Weiler,

Plaintiff,

v.

United States of America, et al.,

Defendants.

No. CV-25-01556-PHX-DWL

**ORDER**

In May 2025, Ronald Joseph Weiler ("Ronald") filed this medical malpractice action under the Federal Tort Claims Act ("FTCA"), alleging that medical personnel at the Department of Veterans Affairs ("VA") erroneously diagnosed him with systolic heart failure after mixing up his echocardiogram results with those of another patient and then, on the basis of that misdiagnosis, subjected him to an unnecessary surgical procedure and unnecessarily placed him in hospice care. Ronald died in November 2025, and Brian Weiler ("Brian"), the personal representative of Ronald's estate, now seeks to be substituted in Ronald's place and to amend the complaint to assert an additional claim under Arizona's Adult Protective Services Act ("APSA"). (Doc. 30.) The United States opposes the motion. For the reasons that follow, the substitution request is granted and the amendment request is denied without prejudice.

**RELEVANT BACKGROUND**

On May 29, 2024, Ronald filed an administrative claim with the VA related to allegedly tortious acts by federal employees at the Carl T. Hayden Veterans'

Administration Medical Center. (Doc. 1 ¶ 12.) According to the claim, when Ronald received an echocardiogram in January 2023 to investigate heart concerns related to COVID-19, hospital employees "mixed up" his results with those of another patient, giving Ronald the false impression that he had severe heart issues. (Doc. 30 at 21.) Afterward, Ronald was subjected to an unnecessary heart surgery, was placed in hospice care, and began preparations for his impending death. (*Id.* at 21-23.) Ten months later, Ronald learned that his diagnosis was mistaken, but he had already "forewent further care and treatment" for lingering COVID-19-related issues while in hospice, dealt with physical injuries from his unnecessary surgery, and was "distressed [and] depressed" by his "anticipatory grief of his own death." (*Id.* at 23.)

On or around November 29, 2024, six months after the VA "failed to issue any response" to the administrative claim, the claim was deemed denied. (Doc. 1 ¶ 12.)

On May 7, 2025, Ronald timely filed the complaint in this action, asserting a medical malpractice-based FTCA claim against the United States. (Doc. 1.)

On July 21, 2025, the United States filed an answer. (Doc. 10.)

On August 20, 2025, the parties filed the Rule 26(f) report. (Doc. 13.) In the report, both sides agreed that they did not "anticipate any amendments to their pleadings." (*Id.* at 2.) Accordingly, the scheduling order, issued that same day, states that "[t]he deadline for joining parties, amending pleadings, and filing supplemental pleadings has expired." (Doc. 14 at 1.)

On October 1, 2025, at the United States' request, this action was stayed due to a lapse in appropriations. (Docs. 18, 19.) On November 4, 2025, while the stay was in effect, Plaintiff passed away. (Doc. 21.) On November 20, 2025, the United States filed a "suggestion of death." (*Id.*) On December 23, 2025, the Court lifted the stay because government activities had resumed. (Doc. 22.)

On January 9, 2026, the parties jointly moved to modify some, but not all, of the deadlines in the scheduling order. (Doc. 23.) As relevant here, the parties moved to extend the deadline for substituting parties but did not move to extend the deadline for amending

the pleadings. (*Id.*) The Court granted the parties' motion and extended, *inter alia*, the deadline to substitute parties to February 18, 2026. (Doc. 24.)

On February 20, 2026, the United States filed a motion to dismiss based on the failure to substitute a new party by the deadline. (Doc. 25.) Four days later, Ronald[1] filed a motion for another extension of the deadline to substitute parties. (Doc. 26.)

On March 20, 2026, the Court denied the motion to dismiss, granted the extension request, and extended the deadline to file a motion to substitute parties to April 3, 2026. (Doc. 29 at 5.)

On March 30, 2026, Ronald filed the pending motion to substitute and for leave to amend. (Doc. 30.) That motion is now fully briefed (Docs. 31, 32) and neither side requested oral argument.

**DISCUSSION**

I. Motion to Substitute

"If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative." Fed. R. Civ. P. 25(a)(1). Ronald asserts (Doc. 30 at 3), and the United States does not dispute, that state law governs whether a party's FTCA claim is extinguished upon that party's death. *Cf. Flores v. Concepcion*, 734 F. App'x 512, 512 (9th Cir. 2018) (in a tort action that was originally filed in the Commonwealth for the Northern Mariana Islands superior court and then removed to federal court pursuant to the Edge Act, explaining that "[a]lthough Rule 25(a) governs substitution of parties procedurally, we look to CNMI law to determine survivorship of claims"); *Reed by and through Reed v. United States*, 891 F.2d 878, 880 (11th Cir. 1990) (looking to Florida law to determine whether FTCA claim was "abated" upon death). Under Arizona law:

> Every cause of action, except a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy, shall survive the death

[1] Although Ronald was, of course, deceased at the time of this and subsequent filings, this order will refer to those filings as having been made by Ronald because that is how they are captioned.

> of the person entitled thereto or liable therefor, and may be asserted by or against the personal representative of such person, provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed.

A.R.S. § 14-3110.

Ronald argues that, under Arizona law, his "medical negligence claim, as well as potential APSA claim, survives his death. Further, [Brian], in his capacity as Personal Representative of [Ronald's] Estate, is the proper party to continue these causes of action. As such, substitution is proper under Rule 25(a)." (Doc. 30 at 4-5, internal citations omitted.) Although the United States contends in its response that both "motions should be denied" (Doc. 31 at 1), it only raises developed arguments opposing "any *new potential* FTCA claims" and argues that "the *APSA* claim" in the proposed amended complaint is improper. (*Id.* at 2, emphasis added). In reply, Ronald correctly notes that the United States "does not address—let alone oppose—[his] request to substitute the Personal Representative or the survival of [his] medical negligence claim." (Doc. 32 at 1-2.)

The substitution request is granted. The United States has forfeited any opposition to that request by failing to address it in the response brief, and even if the issue weren't forfeited, substitution is warranted on the merits. The only relevant inquiry for purposes of the substitution request is whether the claims as to which Brian wishes to be substituted—the medical malpractice claim in the original complaint and the proposed new APSA claim—were extinguished upon Ronald's death. They were not, as neither falls within A.R.S. § 14-3110's enumerated list of claims (i.e., "a cause of action for damages for breach of promise to marry, seduction, libel, slander, separate maintenance, alimony, loss of consortium or invasion of the right of privacy") that are extinguished upon a person's death.

II. <u>Motion for Leave to Amend</u>

Ronald seeks leave to amend the complaint to add an APSA claim. (Doc. 30 at 1.) Ronald contends this amendment request is governed by Rule 15's liberal amendment standard and addresses the four Rule 15 factors, i.e., bad faith, undue delay, futility, and

prejudice. (*Id.* at 3-9.) In response, the United States does not directly address which rule governs the amendment request but advances an array of futility-related arguments. (Doc. 31 at 2-13.) In reply, Ronald argues that the proposed amendment would not be futile. (Doc. 32.)

The parties' amendment-related briefing is unhelpful because it focuses on the wrong legal standard. The scheduling order, issued in August 2025, stated that the deadline for amending the pleadings had already expired. (Doc. 14.) Although the parties later moved, as a result of Ronald's death and the government shutdown, to amend various other aspects of the scheduling order, including the deadline for party substitution, they did not move to amend the (already expired) deadline for amending the pleadings. (Doc. 23.) The pending amendment request, filed in March 2026, thus falls after the amendment deadline. And "when a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4), which provides that '[a] schedule may be modified only for good cause and with the judge's consent,' rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)' s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* "While a court may take into account any prejudice to the party opposing modification of the scheduling order, the focus of the Rule 16(b) inquiry is upon the moving party's reasons for seeking modification." *Id.* (cleaned up). "[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If the moving party "was not diligent, the inquiry should end." *Id.*

Ronald has made no effort to establish the sort of diligence and good cause required by Rule 16, and the Court is skeptical that such a showing could be made on this record. Indeed, Ronald emphasizes that the proposed new APSA claim is based on the same facts

described in his administrative claim to the VA (submitted in May 2024) and in the current iteration of his complaint (filed in May 2025). (*See, e.g.,* Doc. 30 at 7 ["The APSA claim . . . stems from the same underlying facts as the medical negligence claim—the echocardiogram mix-up, the treating physicians' failure to detect the error, the unnecessary procedure, and the placement into hospice and resulting cascade of deterioration. Likewise, the APSA claim has already been administratively exhausted."]; *id.* at 8 ["[Ronald's] letter in lieu of the SF-95 form placed the Government on notice of the erroneous chart mix-up, the unnecessary procedure that followed, the improper hospice placement, and the resulting cascade of injuries. Nothing in the letter limited any future lawsuit to a medical negligence theory. . . . At bottom, both theories arise from the same underlying negligent acts and omissions."]; *id.* at 9 ["The amendment merely adds a legal theory grounded in the very same events the Government was already on notice to examine."].) Ronald also acknowledges that the genesis for the amendment request was not any change to the law or the facts, but simply his counsel's reevaluation of the case after his death. (*Id.* at 5 ["Following [Ronald's] passing, Plaintiff thoroughly reassessed all potential causes of action and is promptly moving for leave to amend."].) It is difficult to see how a belated decision to pursue a new legal theory, which could have been asserted at the outset of the case, could be characterized as acting with the sort of diligence required under Rule 16. *See, e.g.*, *Millenkamp v. Davisco Foods Int'l, Inc.*, 448 F. App'x 720, 721 (9th Cir. 2011) ("The standard of review for amending a Rule 16 scheduling order must be applied in making our decision, rather than the liberal amendment standards of Rule 15. . . . Here, the Millenkamps have not been diligent in seeking an amendment. They admit that the amendment is not based on any new facts. They have not argued that there were any circumstances which prevented them from amending the complaint between the original filing in October 2003 and the amendment deadline, August 2, 2004. . . . Even under Rule 15, a district court does not abuse its discretion by denying amendment after a final judgment when the movant presents no new facts but only new theories and provides no satisfactory explanation for his failure to fully develop his contentions originally.")

(cleaned up); *Siliga v. Deutsche Bank Nat'l Trust Co.*, 637 F. App'x 438, 440 (9th Cir. 2016) ("Because Siliga moved to amend the complaint after the pre-trial scheduling order had been entered, her ability to amend the complaint is governed by Rule 16, not Rule 15. . . . The district court did not err in finding that Siliga was not diligent in seeking to amend her complaint. The facts and claims that Siliga wished to add to her complaint were known to her well in advance of the amendment deadline, and she failed to either seek an amendment or ask for an extension of the deadline."). *See also Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action."); *McDonough v. Bidwill*, 2025 WL 2673966, *6 (D. Ariz. 2025) ("[T]his is not a situation where some external obstacle prevented the Family Plaintiffs from developing a false light claim or asserting it during earlier stages of the case. A district court does not abuse its discretion in denying leave to amend where the movant has presented no new facts but only new theories and has provided no satisfactory explanation for his failure to develop the new contentions originally.") (cleaned up).

With that said, because Ronald did not attempt to address the Rule 16 standard in his motion papers, the Court will deny the amendment request without prejudice to the ability of Brian, the newly substituted plaintiff, to renew that request in a future motion that addresses the relevant standard. *Cf. Chaffin v. Centurion of Arizona, LLC*, 2025 WL 522518, *5 (D. Ariz. 2025) (where motion to amend erroneously argued that the amendment request was governed by Rule 15, denying the request without prejudice).

…

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that Ronald's motion (Doc. 30) is **granted** as to the substitution request but **denied without prejudice** as to the amendment request.

**IT IS FURTHER ORDERED** that the Clerk shall update the docket to reflect that the new Plaintiff is Brian Weiler, in his capacity as personal representative of Ronald Weiler's estate.

Dated this 22nd day of October, 2026.

Dominic W. Lanza
United States District Judge